LEWIS HORD, EUNICE HORD, a widow, JESSE M. HORD, VIR-
GINIA M. HORD, by her mother, and next friend, EUNICE HORD,
CLARENCE JOINER, his wife, MADELINE JOINER, BRYANT
MILLS, his wife, DORIS MILLS and J. V. CARTER v. THE CITY
OF FORT MYERS, a municipal corporation under the laws of the
State of Florida, and CHARLES S. MOORE, as Chief of Police of
the City of Fort Myers, Florida.

13 So. (2nd) 809                                    January Term, 1943
June 4, 1943                                             Division A

**100**

*E. M. Mahaga,* for appellants.
*Parker Holt,* for appellees.

TERRELL, J.:

Appellants as complainants filed their amended bill of complaint in the circuit court praying that appellees as defendants be restrained from interfering with arresting or prosecuting them for standing on the streets and street corners of Fort Myers and distributing the "Watchtower" and "Consolation" magazines.

Defendants filed their answer to the amended bill of complaint in which they incorporated a motion to dismiss. The answer admits that certain of the complainants have been arrested but it asserts that such arrests were made because of resentment to the methods employed by complainants in distributing their literature for the purpose of avoiding fights and disorder on the streets or to prevent traffic congestion because of blocking the streets by complainants and because they had not secured a permit to use the streets as required by the City ordinance.

The complainants were of the sect known as Jehovah's Witnesses and contend that they were exercising a right guaranteed by the State and Federal Constitutions. Ordinance number 147 which is charged to have been violated is lengthy but as pertinent to this case, requires that before any person shall solicit, canvass, sell, or advertise by magazine, pamphlet, tag, button, stamp, or flower for religious, patriotic, charitable, civic, or political purpose, he shall upon written application obtain a special permit from the City

Clerk subject to the approval of the Chief of Police or some duly authorized member of the police department and pay the required fee therefor.

The chancellor granted the motion to dismiss the bill of complaint and the complainants appealed. They contend that Ordinance Number 147 is violative of the Fourteenth Amendment to the Federal Constitution and Section 5, Declaration of Rights, Constitution of Florida.

In State on relation of E. Freel Singleton v. Woodruff, Chief of Police of the City of Tampa, decided by this Court June 1, 1943, we held invalid as to complainants an ordinance of the City of Tampa imposing a license fee of fifty dollars per annum which had for its object the same purpose as the one in question. In that case, no question of public safety or convenience was involved, while in the case at bar, it is contended that the methods employed by appellants are causing fights and traffic congestion and otherwise endangering the safety and convenience of the public in the use of the streets.

In our view, the ordinance assaulted is fatally defective because it vests in the arbitrary discretion of the Chief of Police or some other member of the police department, the power to grant or refuse a permit to complainants for the use of the streets of the City in the exercise of a right guaranteed to them. Hague v. Committee for Industrial Organization, 307 U. S. 496, 59 Sup. Ct. 954, 83 L. Ed. 1423; Schneider v. State of New Jersey, 308 U.S. 147, 60 Sup. Ct. 146, 84 L. Ed. 155; Cantwell v. Connecticut, 310 U.S. 296, 60 Sup. Ct. 900, 84 L. Ed. 1213; Largent v. State of Texas, 318 U. S. 418, Sup. Ct. 87 L. Ed. 627.

In so holding, we do not mean to imply that the city is without a remedy. Freedom to exercise civil liberties was never intended as a license to any one to take the law in his hand and defy public authority. Among civilized people there must be responsibility somewhere for ordered society and we think the city still has jurisdiction over its streets and public ways and may impose reasonable limitations on the use of them for religious or other purposes when public health, morals, safety, or convenience are invaded.

It is asserted that the methods of appellants cause fights

and traffic congestion. Such evils may be corrected by an ordinance limiting the use of the streets to reasonable hours of the day or week, to certain days of the week, or a permit may be required on application under reasonable regulation and that may prescribe the time and condition under which the street may be used. The permit however should not be subject to arbitrary will but should be granted on reasonable showing and should apply to all alike. State ex rel. Singleton v. Woodruff, decided the first day of June, 1943, and Cox v. New Hampshire, 312 U.S. 569, 61 Sup. Ct. 762, 85 L. Ed. 1049.

It is shown that peculiar and unusual conditions exist at Fort Myers that require more than the ordinary method of regulation to preserve the public safety and convenience. So long as such regulations apply to all alike, are devised with the interest of all those affected in view, and are consonant with reason, all social, political, religious, and other organizations may be required to conform to them. When ordered society breaks down, anarchy takes its place and when there is anarchy, freedom of religion and the other freedoms guaranteed by the Constitution vanish. It is utter folly to contend that any sect, bloc, or caste may employ the streets and highways to dispense its creed at the expense of public safety.

Reversed.

BUFORD, C. J., CHAPMAN and ADAMS, JJ., concur.